# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GEORGE LOGUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-10822-DPW |
| | ) | |
| MARTHA COAKLEY, | ) | |
| ASSISTANT DISTRICT ATTORNEY, and | ) | |
| COMMONWEALTH OF MASSACHUSETTS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

The Defendants, Martha Coakley, an unnamed Assistant District Attorney, and the

Commonwealth of Massachusetts (collectively, the "Defendants") hereby submit this

memorandum of law in support of their Motion to Dismiss (the "Motion") the Complaint[1] filed

by Plaintiff George Logue (the "Plaintiff").[2] Dismissal is warranted under Federal Rules of Civil

Procedure 12(b)(1), (2), (4), (5), and (6). Several forms of immunity protect the Defendants

against the Plaintiff's claims and deprive this Court of jurisdiction. Moreover, the Plaintiff has

---

[1] The Plaintiff filed three separate documents, each of which contains its own caption and asserts a single cause of action. The three documents all bear the same case number and will thus be treated by the Defendants and referred to herein as one "Complaint."

[2] To date, neither the Commonwealth of Massachusetts nor the unnamed, defendant Assistant District Attorney has been properly served with process. In the interests of judicial economy, the Motion and this Memorandum are filed and raise arguments on behalf of all three Defendants. By doing so, neither the Commonwealth nor the Assistant District Attorney intends to waive any affirmative defenses or arguments in support of dismissal that they may have on the basis of insufficiency of process or insufficiency of service of process. Both reserve their right to assert all such defenses and arguments, in the event that the Motion is not granted.

asserted numerous deficient claims, but failed to state any claim for which relief may be granted. The Plaintiff has also neglected to identify all defendants.

## THE PLAINTIFF'S ACTION

This civil action is based on allegations of various forms of governmental misconduct in connection with a criminal prosecution against the Plaintiff that commenced in December 2002. (Compl.) All of the Plaintiff's claims are asserted against Middlesex District Attorney Martha Coakley ("Coakley") and an unnamed Assistant District Attorney (the "ADA"). (Compl.) The Plaintiff explained that he "is unaware of all the true names and capacities of defendants sued herein, inclusive, and therefore sues these defendants, if not by their true name, by such names according to their believed capacity of employment." (Id. at 1 ¶ 2.) He stated that he "will amend this Complaint to allege their true names and capacities when ascertained." (Id. at 1 ¶ 2.) The Plaintiff did not specify, however, whether his claims are asserted against these two defendants in their official capacities or their individual capacities. (Compl.) Also unclear from the text of the Complaint is whether the Plaintiff intended to name the Commonwealth of Massachusetts (the "Commonwealth") as an additional defendant. (Id. (listing "Commonwealth of Massachusetts" in caption, but not discussing Commonwealth as a party elsewhere).)

The Plaintiff's Complaint is presented in three parts. (Id.; see also supra Note 1.) The essence of the Complaint is that Defendants Coakley and the ADA maintained a prosecution against the Plaintiff on false charges, engaged in discovery practice without a sufficient basis or sufficient preliminary investigation, defamed him in the course of that discovery practice, and failed to correct inaccuracies in the docket and records regarding his criminal history. (Compl.) Given the most generous reading possible, the Complaint could be read as purporting to assert any or all of the following claims: a federal civil rights claim under 42 U.S.C. § 1983; a state

2

civil rights claim under the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H-11I (the "MCRA"); common law malicious prosecution; common law abuse of process; common law defamation; common law intentional infliction of emotional distress; invasion of privacy by placing the Plaintiff in a false light; invasion of privacy by publicizing the Plaintiff's name and/or likeness without authorization; and negligence in allegedly failing to correct inaccuracies in certain, unspecified records. (Id.)

At the end of Part I of his Complaint, and again at the end of Part III, the Plaintiff makes a demand for general damages, "punitive and exemplary damages" in the amount of $6,000,000.00, interest, attorneys' fees, and costs. (Id. at 4, 11.) It is not clear whether the Plaintiff expects these to be construed as two separate demands, or as one demand that has simply been stated twice. (Id.) Nowhere in the Complaint does the Plaintiff provide any detail regarding the amount of his alleged damages. (Compl.) He certainly does not explain how he arrived at the $6,000,000.00 figure cited above. (Id.)

Mindful of the principle that courts "make all reasonable inferences in favor of the plaintiffs" at the dismissal stage, Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), this Memorandum treats the Complaint as though it purports to assert all causes of action listed above against Coakley and the ADA in both their official and individual capacities, and against the Commonwealth.

3

## **ARGUMENT**

## I.   **SEVERAL FORMS OF IMMUNITY PROTECT THE DEFENDANTS AGAINST THIS ACTION**

### A.    **The Eleventh Amendment provides immunity against all claims for the Commonwealth and the individuals in their official capacities.**

The Eleventh Amendment to the U.S. Constitution deprives this Court of jurisdiction to

hear any of the Plaintiff's claims against the Commonwealth, or Coakley or the ADA in their

official capacities.  The Amendment states that "[t]he Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. am. XI.  While "[t]his language expressly encompasses only suits brought against a

State by citizens of another State," it has been construed as "bar[ring] suits against a State by

citizens of that same State as well," absent the State's consent.  Papasan v. Allain, 478 U.S. 265,

276 (1986).  Immunity is afforded against state claims, as well as federal claims.  Pennhurst State

Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984) ("[I]t is difficult to think of a greater

intrusion on state sovereignty that when a federal court instructs state officials on how to

conform their conduct to state law."); Sierra Club v. Larson, 769 F. Supp. 420, 424 (D. Mass.

1991) (concluding that claim alleging state law violation was barred by Eleventh Amendment).

Accordingly, the Commonwealth itself need not defend against any claims in this action.

Eleventh Amendment immunity also extends to state agencies and departments.  Papasan,

478 U.S. at 276 ("'[I]n the absence of consent a suit in which the State or one of its agencies or

departments is named as the defendant is proscribed by the Eleventh Amendment.'" (alteration in

original) (quoting Pennhurst, 465 U.S. at 100)).  There is no question that the DA's Office is a

state agency.  Miller v. City of Boston, 297 F. Supp. 2d 361, 368 (D. Mass. 2003); see also

4

Commonwealth v. Kozlowsky, 238 Mass. 379, 387-89, 131 N.E. 207, 210-12 (1921) (observing that district attorney's office is office of Commonwealth); Lodge v. District Attorney, 21 Mass. App. Ct. 277, 280-83, 486 N.E.2d 764, 766-68 (1985) (stating that district attorney's office is "properly denominated a State 'agency'"). The office's "predominant function is to 'appear for the [C]ommonwealth . . . in all . . . criminal [and] civil' cases that are pending within its district.'" Miller, 297 F. Supp. 2d at 368 (quoting M.G.L. c. 12, § 27). Further, "the Attorney General has supervisory authority over all district attorneys and can take charge of cases that are being handled by the district attorneys," and "the salaries of the district attorneys, their assistants, and their employees are paid by the Commonwealth [and] [t]he district attorneys must also account to the Commonwealth for their expenses." Id. at 369.

The protections of the Eleventh Amendment further extend to state officials sued in their official capacities for damages as a result of official actions taken. Papasan, 478 U.S. at 277-78 ("Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant."); Kentucky v. Graham, 473 U.S. 159, 165 (1985) (stating that suit against officer in official capacity is suit against State); Edelman v. Jordan, 415 U.S. 651, 663 (1974) (stating that a suit "seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); Willhauck v. Halpin, 953 F.2d 689, 711 n.22 (1st Cir. 1992) (observing that "[a]fter the termination of [a state prosecution], the Eleventh Amendment would bar damages actions [under § 1983] for [due process violations] against . . . state officials acting in their official capacity"). In this case, the individual defendants are clearly officials of the state government. See Commonwealth v. Gonsalves, 432 Mass. 613, 618, 739 N.E.2d 1100, 1104 (2000) ("As a representative of the

district attorney's office, a prosecutor is an officer of the State."); Town of Burlington v. District

Attorney, 381 Mass. 717, 719-20, 412 N.E.2d 331, 333-34 (1980) (observing that district

attorneys act on behalf of Commonwealth). They have been sued for monetary damages

(Compl. at 4, 7, 11) based on allegations relating entirely to their conduct in pursuing the

prosecution of the Plaintiff, engaging in discovery practice, and maintaining records on the

Plaintiff's criminal history (Compl. at 1-3, 5-6, 8-10). Coakley and the ADA must therefore be

found immune from suit in their official capacities.

**B.    Prosecutorial immunity protects Coakley and the ADA in their individual
capacities against all claims.**

      1.    The Massachusetts prosecutorial immunity doctrine protects Coakley and
the ADA against the Plaintiff's state-law claims.

To the extent they have been sued in their individual capacities by the Plaintiff, Coakley

and the ADA are protected absolutely against liability on all state-law claims under the

prosecutorial immunity doctrine, as adopted in Massachusetts. See Chicopee Lions Club v.

District Attorney, 396 Mass. 244, 251-52, 485 N.E.2d 673, 677 (1985) (holding that district

attorney was protected by absolute immunity from suit under MCRA and state common law

claims, including defamation); Whirty v. Lynch, 27 Mass. App. Ct. 498, 501, 539 N.E.2d 1064,

1066 (1989) (declaring that a prosecutor acting within the scope of her duties enjoys absolute

immunity from suit under invasion of privacy statute, M.G.L. c. 214, § 1B, and finding such

immunity applicable even if prosecutor misstated details of plaintiff's criminal record in court).

The Massachusetts Supreme Judicial Court explained its acceptance of this generally recognized

doctrine as follows:

> "The public interest requires that persons occupying such important
> positions as did these [prosecutors] and being so closely identified with
> the judicial department of the government should not be liable to private
> suits for what they do in the discharge of their official duties . . . because

> such immunity tends to insure zealous and fearless administration of the
> law." . . . The fact that the district attorney may have erred or even acted
> maliciously in this case is irrelevant.

Chicopee Lions Club, 396 Mass. at 252, 485 N.E.2d at 678 (quoting Andersen v. Bishop, 304

Mass. 396, 400, 23 N.E.d 1003, 1003 (1939)).  Where the doctrine applies, the plaintiff will be

found to have failed to state a claim. Id. at 253.

In the instant case, there can be no doubt that all of the Plaintiff's state-law claims relate

to the performance of official prosecutorial duties.  Nearly all such claims concern conduct

allegedly taken by Coakley and the ADA in pursuing the criminal prosecution of the Plaintiff,

engaging in discovery practice, and making statements in the course of these activities.  The one

possible exception is the Plaintiff's claim for negligence in maintaining records concerning him.

As record-keeping is integrally related the prosecutorial functions listed above, it should be

afforded no less protection.  Cf. Burge v. Parish of St. Tammany, 1997 WL 10243, at *10 (E.D.

La. Jan. 8, 1997) (applying Louisiana law, which resembles Massachusetts law, to find that even

negligent record keeping is a "function[] of the prosecutors' role in the judicial process of

prosecuting criminal defendants [which] cannot be segregated from the DA defendants['] 

prosecutorial duties but [is] a means of accomplishing them and as such, the DA defendants are

protected by absolute prosecutorial immunity"), aff'd in part, appeal dismissed in part, and

remanded by 187 F.3d 452 (5th Cir. 1999).  The conduct at issue is absolutely protected against

state claims.

2.    Prosecutorial immunity also protects Coakley and the ADA from the
      Plaintiff's § 1983 claim.

Similarly, the federal doctrine of prosecutorial immunity is applicable to § 1983 actions

for damages against prosecutors in their individual capacities arising from the performance of

duties "'intimately associated with the judicial phase of the criminal process.'"  Buckley v.

Fitzsimmons, 509 U.S. 259, 269-70 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31

(1976) (holding that "in initiating a prosecution and in presenting the State's case, the prosecutor

is immune from a civil suit for damages under § 1983")); see also Willhauck, 953 F.2d at 711

n.22 ("[A] § 1983 action brought after the fact for damages against prosecutors in their

individual capacity would . . . be barred by the doctrine of prosecutorial immunity.").

The Imbler Court explained the necessity for prosecutorial immunity in such cases as

follows:

> A prosecutor is duty bound to exercise his best judgment both in deciding
> which suits to bring and in conducting them in court. The public trust of
> the prosecutor's office would suffer if he were constrained in making
> every decision by the consequences in terms of his own potential liability
> in a suit for damages. Such suits could be expected with some frequency,
> for a defendant often will transform his resentment at being prosecuted
> into the ascription of improper and malicious actions to the State's
> advocate. . . . Further, if the prosecutor could be made to answer in court
> each time such a person charged him with wrongdoing, his energy and
> attention would be diverted from the pressing duty of enforcing the
> criminal law.

424 U.S. at 424-25. The Court also recognized that there are certain issues "with which judges

struggle in actions for post-trial relief, sometimes to differing conclusions," and that "[t]he

presentation of such issues in a § 1983 action often would require a virtual retrial of the criminal

offense in a new forum, and the resolution of some technical issues by the lay jury." Id. at 425.

As additional grounds, the Court noted that absolute immunity would advance the goal of

accurately determining guilt or innocence by allowing prosecutors to exercise "wide discretion in

the conduct of the trial and the presentation of evidence" with no fear of personal liability. Id. at

426. Without absolute immunity, "a prosecutor understandably would be reluctant to go forward

with a close case where an acquittal likely would trigger a suit against him for damages." Id. at

426 n.24. Furthermore, prosecutors could be less inclined to bring forward all evidence

suggestive of innocence or mitigation, and courts evaluating requests by defendants for post-trial relief could be influenced by the knowledge that a decision favoring the accused could result in liability for a well-meaning prosecutor. Id. at 427 & n.25.

As an absolute protection, prosecutorial immunity "defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." Id. at 419 n.13. Under Imbler, the scope of prosecutorial immunity clearly extends to "initiating a prosecution and . . . presenting the State's case," as such activities are "intimately associated with the judicial phase of the criminal process" and cast the prosecutor in the role of "advocate." Id. at 431. Other advocacy functions entitled to absolute protection include those "preliminary to the initiation of a prosecution and actions apart from the courtroom," such as duties "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Buckley, 509 U.S. at 272-73. The scope of immunity has additionally been found to extend to actions taken in the discovery process. See Reid v. New Hampshire, 56 F.3d 332, 336 (1st Cir. 1995) (recognizing that prosecutor cannot face personal liability for knowingly suppressing exculpatory information). Like the Plaintiff's state-law claims, his § 1983 claim appears to be predicated entirely on allegations concerning the conduct of Coakley and the ADA in pursuing the prosecution of the Plaintiff, and engaging in discovery and making statements in the course of that prosecution. Accordingly, the claim arises from activity that is absolutely protected by prosecutorial immunity.

Even if Coakley and the ADA were not entitled to absolute immunity, they would nevertheless be entitled to qualified immunity. Qualified immunity protects state officials exercising discretionary authority from civil lawsuits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

9

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Moreover, the qualified immunity

privilege is "an entitlement not to stand trial or face the other burdens of litigation . . . . [It] is

*immunity from suit* rather than the mere defense to liability; and like an absolute immunity, it is

effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S.

511, 526 (1985). Consequently, a court should rule on a claim of qualified immunity at the

outset of a lawsuit. Harlow, 457 U.S. at 818; Siegert v. Gilley, 500 U.S. 226, 232 (1991)

(immunity challenge should be decided at beginning of lawsuit so that a "defendant who rightly

claims qualified immunity [need not] engage in expensive and time-consuming preparation to

defend the suit on its merits").

To avoid dismissal on qualified immunity grounds, a plaintiff must identify a specific,

particularized constitutional right applicable to the "specific context of the case." Saucier v.

Katz, 533 U.S. 194, 198 (2001). A broad, abstract right – such as due process – is not sufficient.

Id. That is, the plaintiff must show that the "contours of the right [were] sufficiently clear that a

reasonable official would understand that what he is doing violates that right." Anderson v.

Creighton, 483 U.S. 635, 640 (1987). See also Brennan v. Hendrigan, 888 F.2d 189, 192 (1st

Cir. 1989).

Certainly, the Plaintiff here has not met his burden to specifically identify such a

constitutional right. Indeed, his Complaint as a whole is characterized by general and conclusory

allegations concerning violations of the "Due Process and Equal Protection clauses of the

Fourteenth Amendment and a panoply of other rights arising under the Constitution." (Compl. at

2 ¶ 7.) He fails to elaborate any precise theory by which such rights should be found violated.

Coakley and the ADA would thus be protected by qualified immunity. See Saucier, 533 U.S. at

199; Siegert, 500 U.S. at 233-34 (stating that defendant is entitled to qualified immunity where the facts alleged cannot "be held to state a claim for denial of a constitutional right").

C.    **The Defendants are additionally protected under the sovereign immunity doctrine and the Massachusetts Tort Claims Act.**

In addition to the foregoing, each of the Defendants is protected against certain state-law claims as a matter of Massachusetts law.  As a general rule, the Commonwealth is protected by sovereign immunity against actions under state law.  See, e.g., Riley v. Worcester County Trust Co., 89 F.2d 59, 64 (1st Cir. 1937), aff'd, 302 U.S. 292 ("[B]ecause of its sovereignty no suit can be maintained against a state, without its consent, by one of its own citizens."); Whitney v. Worcester, 373 Mass. 208, 212, 366 N.E.2d 1210, 1213 (1977) (discussing fact that Massachusetts retains common law immunity); Commonwealth v. ELM Labs., 33 Mass. App. Ct. 71, 78, 596 N.E.2d 376, 380 (1992) ("There can be no doubt of the age and strength of the doctrine of sovereign immunity in this Commonwealth.").  When sued in their official capacities, those acting in the Commonwealth's behalf are entitled to the same protection.  See Hannigan v. New Gamma-Delta Chapter of Kappa Sigma Fraternity, 367 Mass. 658, 659, 327 N.E.2d 882, 883 (1975) (concluding that trustees of state university are entitled to claim sovereign immunity). While the Commonwealth has waived such immunity in certain cases through the Massachusetts Tort Claims Act (the "MTCA"), M.G.L. c. 258, § 2, it has not done so with respect to "any claim arising out of an intentional tort, including . . . intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, . . . [or] invasion of privacy," M.G.L. c. 258, § 10(c). Thus, each of the Plaintiff's intentional tort claims remain barred by the sovereign immunity doctrine as against the Commonwealth, as well as Coakley and the ADA in their official capacities.

To the extent that the Plaintiff has asserted a negligence claim based on the Defendants' alleged failure to correct inaccuracies in certain records, Coakley and the ADA would be immune from suit on that claim under the MTCA. That statute provides that "no . . . public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." M.G.L. c. 258, § 2. All of the Plaintiff's allegations against the two individuals concern their conduct in maintaining a prosecution against him, engaging in discovery practice, and keeping records. (Compl. at 1-3, 5-6, 8-10.) The conduct at issue thus clearly fell within the scope of their office or employment and cannot give rise to liability against them in their official or individual capacities under the MTCA.

## II.    THE PLAINTIFF'S CLAIMS ARE DEFICIENT IN OTHER RESPECTS

### A.    The deference afforded plaintiffs under Rule 12(b)(6) has limits.

In considering a Rule 12(b)(6) motion to dismiss, "a court must take the [well-pleaded] allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson, 987 F.2d at 3; Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, 988 (1st Cir. 1992). However, the Rule 12(b)(6) standard "is not entirely a toothless tiger." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). "[M]inimal requirements are not tantamount to nonexistent requirements. The threshold [for stating a claim] may be low, but it is real." Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). For example, this Court will not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Moreover, Rule 12(b)(6) does not entitle the plaintiff to rest on "subjective characterizations" or conclusory descriptions of a "general scenario which could be

dominated by unpleaded facts." Id. at 53; Dewey v. University of N.H., 694 F.2d 1, 3 (1st Cir. 1982). Although for pleading purposes, the dividing line between sufficient facts and insufficient conclusions is often blurred, it nonetheless exists.

> It is only when . . . conclusions are logically compelled, or at least supported, by the stated facts, that is when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes.

Correa-Martinez, 903 F.2d at 53 (quoting Dartmouth Review, 889 F.2d at 16).

## B.     All claims based on statements made in litigation are further barred by the absolute litigation privilege.

Each of the claims advanced by the Plaintiff based on statements made in litigation would be further barred by the absolute litigation privilege. That privilege extends to statements made by an attorney "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." Sriberg v. Raymond, 370 Mass. 105, 109, 345 N.E.2d 882, 884 (1976); accord Doe v. Nutter, McClennan & Fish, 41 Mass. App. Ct. 137, 140, 668 N.E.2d 1329, 1332 (1996); Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 361, 416 N.E.2d 528, 530 (1981). It serves "[t]he public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." Sriberg, 370 Mass. at 109; 345 N.E.2d at 884.

Absolute in nature, the privilege generally "provides a complete defense even if the offensive statements are uttered maliciously or in bad faith. In addition, the absolute privilege which attaches to those statements protects the maker from any civil liability based thereon," regardless of the cause of action asserted. Doe, 41 Mass. App. Ct. at 140, 668 N.E.2d at 1332-33. Courts have construed the privilege in this broad manner not "to prevent actions from being brought in cases where they ought to be maintained, but [due to] the fear that if the rule were

13

otherwise, numerous actions would be brought against persons who were acting honestly in the discharge of a duty." Sullivan, 11 Mass. App. Ct. at 367, 416 N.E.2d at 533. Moreover, this broad construction prevents plaintiffs from circumventing the privilege by creatively characterizing their cause of action. See Doe, 41 Mass. App. Ct. at 140, 668 N.E.2d at 1332-33 ("To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory."); cf. Sullivan, 11 Mass. App. Ct. at 367, 416 N.E.2d at 533-34 (citing cases standing for proposition that rule operates to prevent circumvention by plaintiffs who assign different label to cause of action). Accordingly, the privilege has been found to bar claims for libel, defamation, and negligence where they were based on statements made in connection with litigation. Frazier v. Bailey, 957 F.2d 920, 932-33 (1st Cir. 1992) (applying Massachusetts law, and finding defamation, negligence, and gross negligence claims barred); Sullivan, 11 Mass. App. Ct. at 367, 416 N.E.2d at 533-34 (finding libel and negligence claims barred). It has also been found to defeat claims for invasion of privacy, Doe, 41 Mass. App. Ct. at 138-41, 668 N.E.2d at 1331-33, and abuse of process, Sullivan, 11 Mass. App. Ct. at 367, 416 N.E.2d at 533-34, as well as intentional infliction of emotional distress, Frazier, 957 F.2d at 932-33; Doe, 41 Mass. App. Ct. at 138-41, 668 N.E.2d at 1331-33; Sullivan, 11 Mass. App. Ct. at 367, 416 N.E.2d at 533. Claims for violation of the MCRA have also been determined to be barred. Frazier, 957 F.2d at 932-33; Doe, 41 Mass. App. Ct. at 138-41, 668 N.E.2d at 1331-33.

Several of the claims in the Complaint are based in whole or in part on statements allegedly made by the Defendants in instituting, conducting, and/or preparing for litigation. In particular, the Plaintiff's defamation claim appears to be based entirely on statements allegedly made by the Defendants in the discovery process. (Compl. at 2 ¶ 6 ("False information and statements in the discovery articles were made with actual malice by defendants, their agents,

14

servants and employees, and were made with the knowledge that accusations of other illegal conduct were false, or were made with reckless disregard either way."), 9 ¶ 6 (same), 2 ¶ 7 (alleging that Defendants exposed "plaintiff to a discovery process in which additional false statements were published and communicated," and, "in performing discovery in this manner, have continued to defame plaintiff's good name by subjecting him to false charges and statements against his person").) Likewise, in support of his invasion of privacy claims, the Plaintiff alleges that the Defendants "in conducting discovery and publishing false statements, did unreasonably, substantially and seriously interfere with the privacy of plaintiff, did unreasonably cause his name and image to be placed on public display, did unreasonably cause his name and person to be portrayed in a false light, ant to suffer from notoriety, all in violation of MGL c. 214 § 1B." (Compl. at 2 ¶ 9, 9 ¶ 9; see also Compl. at 2 ¶ 7 (alleging that the Defendants "cast him in a false light" in engaging in discovery practice that included false statements).) Similar assertions appear within the Plaintiff's allegations of malicious prosecution and abuse of process. (Compl. at 5 ¶ 2 ("Defendant's negligent actions and omissions including the publishing of false information in the discovery process clearly indicate an abuse of process leading to malicious prosecution.").)

Each of these fails to state a claim for which relief may be granted to the extent that it arises from statements allegedly made in the course of litigation or preparation therefor. See Sullivan, 11 Mass App. Ct. at 361 n.4, 369, 416 N.E.2d at 530 n.4, 534 (stating that defense of absolute privilege was properly asserted by Rule 12(b)(6) motion, that complaints did not set out claims for which relief could be granted, and that motions to dismiss were properly allowed); cf. Doe, 41 Mass. App. Ct. at 141, 668 N.E.2d at 1333 (concluding that claims barred by absolute privilege were properly dismissed).

**C.    The Commonwealth is not a "person" amenable to suit under § 1983 or the MCRA.**

In addition to the reasons provided above, the Commonwealth, as well as Coakley and

the ADA in their official capacities, are not amenable to suit under § 1983 or the MCRA,

because they do not fall within the ambit of those statutes.  Section 1983 provides in relevant part

as follows:

> Every *person* who, under color of [state law], subjects or causes to be
> subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges or
> immunities secured by the Constitution and laws, shall be liable to the
> party injured in any action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983 (emphasis added).  It is well-settled that a state is not considered a "person"

under this statute.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989); Lapides v.

Board of Regents of Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) ("[A] State is not a 'person'

against whom a § 1983 claim for money damages might be asserted.").  Thus, a § 1983 claim

cannot be maintained against the Commonwealth.  See id.  State officers sued in their official

capacity are likewise exempt from the statute's reach.  See Elliot v. Cheshire County, 940 F.2d 7,

12 (1st Cir. 1991) (dismissing § 1983 claim against state trooper, as trooper was acting as arm of

the state).

Similarly, the MCRA provides as follows:

> Any person whose exercise or enjoyment of rights secured by the
> constitution or laws of the United States, or of rights secured by the
> constitution or laws of the commonwealth, has been interfered with, or
> attempted to be interfered with, as described in section 11H[, that is,
> "[w]henever any *person or persons*, whether or not acting under color of
> law, interfere by threats, intimidation or coercion, or attempt to interfere
> by threats, intimidation or coercion, with the exercise or enjoyment by any
> other person or persons of rights secured by the constitution or laws of the
> United States, or of rights secured by the constitution or laws of the
> commonwealth"], may institute and prosecute in his own name and on his

> own behalf a civil action for injunctive and other appropriate equitable
> relief as provided for in said section, including the award of compensatory
> money damages.

M.G.L. c. 12, §§ 11H-11I (emphasis added).[3]  Under this statutory scheme, too, the

Commonwealth and its departments are not considered "persons."  Commonwealth v. ELM

Labs., 33 Mass. App. Ct. at 76 & n.9, 596 N.E.2d at 379 & n.9 (holding that "the Commonwealth

is not a 'person' for purposes of c. 12, §§ 11H and 11I," and noting that court "draws no

distinction between suits against the Commonwealth and . . . suits against a department of the

Commonwealth").  The Commonwealth, and Coakley and the ADA in their official capacities

thus cannot be liable under the MCRA.

### D.    The Plaintiff failed to state a claim under the MCRA, because he did not allege the use "of threats, intimidation or coercion."

The Plaintiff did not explicitly reference the Massachusetts Civil Rights Act in his

Complaint.  If he did intend to assert a claim under that statute, though, his effort failed.  The

MCRA provides a cause of action to "[a]ny person whose exercise or enjoyment of rights

secured by the constitution or laws of the United States, or of rights secured by the constitution

or laws of the commonwealth, has been interfered with, or attempted to be interfered with [by

threats, intimidation or coercion]."  M.G.L. c. 12, §§ 11H-11I.  A plaintiff must thus allege in his

complaint that "threats, intimidation or coercion" were used in interfering or attempting to

interfere with his rights.  Appleton v. Town of Hudson, 397 Mass. 812, 817, 494 N.E.2d 10, 13

(1986); Rosenfeld v. Board of Health, 27 Mass. App. Ct. 621, 626-27, 541 N.E.2d 375, 379

(1989).

---

[3] The Plaintiff did not expressly reference the MCRA in his Complaint (Compl.; see also infra Section II.D).  This Memorandum nevertheless evaluates the extent to which his Complaint may be read as stating a claim under this statute in the interest of affording the Plaintiff all reasonable inferences.  Watterson, 987 F.2d at 3.

17

Here, as in the cases cited above, "[t]aking all inferences in favor of the plaintiff, the complaint still does not allege any conduct by anybody that can be considered a 'threat, intimidation or coercion.'" Appleton, 397 Mass. at 817, 494 N.E.2d at 13; accord Rosenfeld, 27 Mass. App. Ct. at 627, 541 N.E.2d at 379. In the context of the MCRA, a threat constitutes "acts or language by which another is placed in fear of injury or damage," while intimidation is "creation of fear to compel conduct," and coercion amounts to "the active domination of another's will." Delaney v. Chief of Police, 27 Mass. App. Ct. 398, 409, 539 N.E.2d 65, 72 (1989). No part of the Complaint at issue specifically alleges that the Plaintiff was subjected to "threats, intimidation or coercion." Moreover, no such allegation can be inferred from the many accusations levied therein. While the Plaintiff claimed that he was wronged, he never asserted that the Defendants placed him in fear of injury or damage, created fear within him to compel certain conduct, or actively dominated his will. In short, he did not allege that any Defendant forced him or attempted to force him to take any particular action against his wishes.

In light of his deficiency in pleading, any MCRA claim that is read into the Plaintiff's Complaint should be dismissed. See Appleton, 397 Mass. at 817, 494 N.E.2d at 13 (concluding that MCRA claim was properly dismissed based on failure to allege "threats, intimidation or coercion"); Rosenfeld, 27 Mass. App. Ct. at 627, 541 N.E.2d at 379 (finding that plaintiff who did not allege "threats, intimidation or coercion" failed to state a claim under MCRA, and dismissal of the claim was justified).

**E.**     **The tort of false light invasion of privacy is not recognized in Massachusetts.**

The Plaintiff cannot maintain an action against the Defendants for invading his privacy by placing him in a false light. While such a tort is recognized in other jurisdictions, it is not recognized in Massachusetts. See, e.g., ELM Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass. 779,

18

787, 532 N.E.2d 675, 681 (1989) ("This court has not recognized that tort and does not choose to do so now."); Yovino v. Fish, 27 Mass. App. Ct. 442, 450, 539 N.E.2d 548, 553 (1989) ("To date Massachusetts has not adopted the false light invasion of privacy tort."); see also Dasey v. Anderson, 304 F.3d 148 (1st Cir. 2002) (noting that Massachusetts does not recognize cause of action for false light invasion of privacy). Thus, the Plaintiff does not state a claim for which relief may be granted in alleging that the Defendants "did unreasonably cause his name and person to be portrayed in a false light" (Compl. at 2 ¶ 9, 9 ¶ 9) and "cast him in a false light" by "subjecting him to false charges and statements against his person" (Compl. at 2 ¶ 7, 9 ¶ 7).

### F.    The Complaint is impermissibly lacking in specificity.

As yet another basis for dismissal, the Complaint is impermissibly lacking in specificity. "Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation." Fisher v. Flynn, 598 F.2d 663, 665-66 (1st Cir. 1979) (finding that certain paragraphs of Complaint were "plainly of the invalid conclusory variety, merely reflecting plaintiff's subjective characterization of defendants' motives and actions" or did not identify specific, unlawful conduct; and that plaintiff did not sufficiently allege presence of all elements of cause of action and supporting facts); see also Glaros v. Perse, 628 F.2d 679, 683 (1st Cir. 1980) (finding that plaintiff had failed to state civil rights claim where Complaint was "bereft of specific allegations concerning" defendant city and made only "generalized allegations" of involvement by defendant detective without describing or illustrating allegedly unlawful conduct). The Plaintiff's pro se status does not relieve him of this duty to plead with specificity. "Although [the First Circuit Court of Appeals has] read pro se complaints liberally . . . [it has] required even pro se plaintiffs to plead specific facts backing up their claims of civil rights violations." Glaros, 628 F.2d at 684 (noting that, in case alleging

improper surveillance, plaintiff should briefly describe activities of each defendant and how his rights were impinged upon; and observing that, with some defendants, plaintiff failed to provide many details regarding surveillance, and to describe the means used, the nature of the intrusion, and the location and timing of all such activities).

As set forth above, federal law provides for a civil rights action against one who causes another to be subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A state civil rights action is available where one "whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with [by threats, intimidation or coercion]." M.G.L. c. 12, §§ 11H-11I.

The Plaintiff has styled his civil action as primarily asserting civil rights claims. (Compl. at 1 (beginning Complaint with statement, "Comes now plaintiff with this complaint pursuant to U.S.C. Title 42 and in response to the following civil rights violations"; and stating "Civil Rights Violation – Malicious Prosecution" in heading under "FIRST CAUSE"), 5 (stating "Civil Rights Violation – Malicious Prosecution" in heading under "SECOND CAUSE"), 8 (stating "Civil Rights Violation – Intentional Infliction of Distress" in heading under "FIRST CAUSE").)

At best, however, the Complaint alleges in a general fashion that, throughout 2003 and 2004, the Defendants violated his rights by prosecuting him on charges that they knew to be false or failed to investigate sufficiently, and by making false statements about him. (Compl.) Nowhere is any detail provided concerning the charges that were brought against him; the basis for his assertions that they were false, known to be false, and insufficiently investigated; or any specific actions or events. (Compl.) Indeed, the most specific allegation of civil rights violations

contained in the Complaint states that "[o]n May 7, 21, and June 2, 2004 defendants Coakley and

Assistant District Attorney continued to violate plaintiff's rights, guaranteed by the Due Process

and Equal Protection clauses of the Fourteenth Amendment and a panoply of other rights arising

under the Constitution, by acting under color of state law, 42 U.S.C.S. 1993 (1988), and

exposing plaintiff to a discovery process in which additional false statements were published and

communicated [sic]." (Compl. at 2 ¶ 7.) The Plaintiff in no place alleges exactly what occurred

on the dates listed, how the Defendants "continued to violate plaintiff's rights," which "other

rights" were infringed upon, or what false statements were made. (Compl.)

Where a civil rights claim fails to satisfy this specificity requirement, its dismissal is

appropriate. Glaros, 628 F.2d at 685 (finding lack of specificity to be one of multiple grounds

for dismissal).

### III.   THE ADA HAS NOT BEEN NAMED IN THE COMPLAINT, CANNOT BE SERVED, AND MUST THUS BE DISMISSED AS A DEFENDANT.

An additional infirmity in the Plaintiff's Complaint lies in the fact that it fails to identify

the ADA by name. (Compl.) This defect prevents the ADA from being notified or properly

served with process, deprives this Court of personal jurisdiction over him/her, and requires

dismissal of the ADA as a defendant. Glaros, 628 F.2d at 685, 687 (holding that district court

lacked personal jurisdiction over certain officials that the plaintiff listed as "unknown"

defendants but did not identify or serve by the time the court acted on motions to dismiss filed by

other defendants who were identified); United States ex rel. Lee v. People of State of Illinois,

343 F.2d 120, 120-21 (7th Cir. 1965) ("The district court had no jurisdiction over defendants

designated in the complaint as 'Unknown Subjects and Party(s)' since they were not named and

served with summons and a copy of the complaint."); cf. Tolefree v. Ritz, 382 F.2d 566, 567 (9th

Cir. 1967) (stating that civil rights action was properly dismissed as to seven "Doe" defendants

whose names had not been ascertained by plaintiff). The Plaintiff has little excuse for this deficiency. He can easily obtain the name of the assistant district attorney who prosecuted him. Any lack of diligence on his part in acquiring this information should not inure to his benefit and the detriment of this defendant.

## CONCLUSION

For the foregoing reasons, the Motion should be allowed, and the Complaint should be dismissed in its entirety.

Respectfully submitted,

THOMAS F. REILLY
Attorney General

_____
Randall E. Ravitz (BBO # 643381)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2852

Dated: November 22, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by first class mail, postage prepaid, on November 22, 2004 to:

George Logue
General Delivery
Boston, MA 02205

*Pro se.*

_____
Randall E. Ravitz

22