UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| George Logue | ] | CIVIL ACTION |
|  | ] |  |
| Plaintiff | ] | CASE NO. 04 – 10822 - DPW |
|  | ] |  |
| v. | ] |  |
|  | ] |  |
| Martha Coakley | ] |  |
| Assistant District Attorney | ] |  |
| Commonwealth of Massachusetts | ] |  |
| Defendants | ] |  |
|  | ] |  |

## ADDENDUM TO PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS MOTION TO DISMISS

Plaintiff respectfully submits to this Honorable Court, this Addendum to his Memorandum of Law in Support of his Opposition to Defendant's Motion To Dismiss, which was issued November 24, 2004. The original complaint was issued pursuant to U.S.C.S. Title 28 § 1915(e). After defendant's response, which came in the format of a motion rather than an "answer, " Plaintiff filed an Opposition, and the supporting memorandums are offered to show good cause why the complaint should not be dismissed. Where defendant's pleading is a broad based interpretation of law pertaining to the issues in Rule 12(b)6 and claims of immunity. This Addendum and Memorandum are offered to refute those interpretations and underscore that the allegations within the amended complaint are trialworthy under a § 1983 claim.

### RELEVANT HISTORY

On April 18, 2004, plaintiff filed his own complaint in accordance with Federal Rules of Civil Procedure, and having given written notification of the complaint pursuant to M.G.L. 258 § 4. On September 18, 2004, an amended complaint was filed pursuant to Rule 15(a) and served on the defendants for their violations of his civil rights during proceedings held in the trial Court in Cambridge, Massachusetts. The complaint alleges the District Attorney and her agents, under the Commonwealth of Massachusetts, supported false and defamatory charges by moving towards a malicious prosecution that, from the very onset, was nothing but a frivolous and vexatious action that was carried out under false pretenses and in bad faith until it was finally terminated in plaintiff's favor.

The complaint was processed and served pursuant to Federal Rules of Civil Procedure, Rule 4.1 and U.S.C. S. Title 28 § 1915(d).

In October 2004, defendants requested an extension for filing their response that was granted by the Court, and on November 22, 2004, the defendants responded by submitting a Motion To Dismiss and a 22-page Memorandum of Law.

On November 24, 2004, plaintiff issued his immediate Opposition and Supporting Memorandum of Law to the defendant's motion to dismiss. This addendum supplements and follows the argument presented in that [primary memo] Memorandum of Law.

## ARGUMENT

Plaintiff must reiterate that the complaint should not be dismissed because these defendants violated plaintiff's rights guaranteed by the Fourteenth Amendment, and a panoply of other rights, including the Sixth Amendment of the Constitution. They failed to consider the details of how the false accusations were leveled against plaintiff, and as will be amended into the complaint, they conspired and aided in supporting the false charges against him (see related complaints Case No's. 04 – 12096, 10823, and 10824), thereby violating 42 U.S.C.S. § 1985(3). By failing to diligently perform their duties, and abusing their discretion in an investigative and administrative capacity, while plaintiff was under duress, each of them contributed to and caused the Civil Rights violations to continue. The violations of law merit being addressed. In addition, for the reasons cited and examined herein, generally, the complaint should go forward and not be dismissed.

In plaintiff's primary memo of November 24, 2004, he cited reasons and recent supporting cases challenging the generally accepted rule that officials of the state and of the Court are not amenable to suit. Where it is propounded that a suit against a state employee, in their official capacity, is equivalent to a suit against the state, it has been well established that a state is not open to suit under Title 42 U.S.C.S. § 1983 because a state is not a "person" as defined within that statute. By the same token, as a public entity, the services these state courts and their officials provide, under the watchful eye of the Commonwealth, in this instance, must be made available to all people. In providing these services, the officials and employees of the Court (state), as always, must abide by the applicable cannons, doctrines, and laws therein. As such, where Title II of the ADA of 1990 (ADA 104 Stat. 337 42 U.S.C.S.§§ 12131-12165) was recently used to challenge the immunity doctrine, it provides that "no qualified individual ... be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."

As cited in plaintiff's primary memo, <u>Tennessee v. Lane</u>, ibid. suggests state officials and states themselves are not necessarily shielded, by claiming sovereign immunity under the Eleventh Amendment. Dismissing this case under blanketed immunities, would amount to nothing more than a systematic deprivation of plaintiffs rights, thereby denying him a just access to the Court. Where the Attorney General pointed out that the Massachusetts Supreme Judicial Court may have generally accepted that "public interest requires that persons occupying such important positions as did these [prosecutors]... should not be liable...," as outlined in certain doctrines, the Court must also be aware that a District Attorney is granted a professional responsibility and a wide discretion in determining whether to prosecute a charge. And in using that discretion, it is assumed that a District

Attorney will use it sincerely, effectively and honestly. The fact that Coakley erred and acted maliciously is most certainly relevant, in the instant case. The question is which errors and actions are subject to immunity? Where the actions were conspired, and in conjunction with the various capacities of the District Attorneys job, how malicious or willful must the act be for it to obviate some consistent form of penalty or remedial action?

More specifically, where the defendant District Attorney, and other officers of the Court, have enjoyed a prolific amount of statutory protection, plaintiff suggests that absolute immunity, and even qualified immunities should not rescue defendants in the instant case where they were acting in a ministerial fashion or some other capacity. State prosecutors should not be entitled to absolute immunity where allegations have been brought forth about pretrial investigations and evidence fabricated under color of state law, and thereby violating plaintiff's federal rights. Buckley v. Fitzsimmons, 509 U.S. 259, 125 L. Ed. 2d 209, 113 S. Ct. 2606 (1993).

The need for prosecutorial immunity to secure the effectiveness of a district attorney's job is undisputed. However, the scope of that immunity must be consistent for the sake of preserving justice for all. Yes, the Imbler Court provides some broad-based considerations when it notes that the denial of absolute immunity for prosecutorial actions "intimately associated with the judicial phase of the criminal process" could adversely affect "the functioning of the criminal justice system." McSurely v. McClellan, 243 U.S. App DC 270, 753 F2d 88 (1985) (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 426 (1976)). However, in more instances that are specific these noted concerns are not so prevalent. In particular, it is now recognized in courts, that removing the absolute immunity blanket does not threaten the system, but rather makes it more equitable where a judicial officer was acting outside her prosecutorial duties.

The apparent rule in some jurisdictions is that the public prosecutor's conduct is privileged, and they need to be immune from suit. Restatement of Torts § 656 sets forth the rule in the following way. "As a public prosecutor, and acting in an official capacity, they are absolutely privileged to initiate and continue proceedings." However, other authorities state to the effect that even the commencement of a prosecution can be outside the scope of the District Attorney's, or her agent, the Assistant District Attorney's authority when she is aware [emphasis added] that a particular charge is groundless in law or in fact, and yet they intentionally file such charge.

In the circumstances of this case defendant Coakley, and under her control, the agents, acted through a corrupt motive, and outside the bounds of professional and ethical doctrines and, therefore are not absolutely immune from liability.[1] Koch v. Grimminger, 192 Neb 706, 223 NW 223 NW2d 833 (1974). Further and as outlined in the complaint, the defendants have used the system for something other than what it was intended. According to Restatement of Torts § 682, one who uses a legal process against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary

---

[1] Sixty three Am Jur 2d section 6, Prosecuting Attorneys; - Investigative or Administrative Functions

loss caused thereby. And the validity of the arrest, had it been, is immaterial.[2] Where, absolute immunity does not apply, the doctrine of quasi-judicial immunity only protects the prosecuting officers if the conduct in question was performed within the scope of their official duties. Here again, the broad scoped immunity does not apply to a prosecutor engaged in essentially investigative or administrative functions.[3] Burns v. Reed, 500 U.S. 478, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991). Each of these cited cases describes why potential dangers associated with denials of immunity are not as prevalent where the prosecutor is functioning in her role as an investigator. In performing these actions the prosecutor, like the police officer is responsible for flushing out evidence of criminal activity. Performed outside the setting and structure of the courts controlled atmosphere, these functions render a protection of only qualified immunity as opposed to absolute immunity. And as the McSurely Court stated, there would seem to be no sound reason for granting the prosecutor's absolute or quasi-judicial immunity beyond the limited bounds observed in *Imbler*. Extending the broader immunity to investigatory aspects of the prosecutor's duties would permit the prosecutor an absolute immunity for precisely the same conduct for which police officers have traditionally been entitled to only qualified immunity. Thus, each of these courts concluded there is no real basis for recognizing such a distinction.

Plaintiff alleges these were two functions where the District Attorney and her agents, in particular, were guilty of acting under color of law. First, by using the power and authority of her office to investigate and communicate with the police, such malicious and false information, and second, to oversee a group of defendant assistants, in an administrative capacity, which would allow that information, and the process as a whole to go on for nearly a year. As an administrator, a mentor, Coakley coached and oversaw her defendant assistants who unquestioningly finalized and signed some of the discovery documents. As Coakley functioned as an investigator and administrator rather than as an officer of the Court, the defendant would be entitled, at most, to qualified immunity.[4] McSurely 225 U.S. App DC at 67. Even this would require Coakley and her assistants to establish that her or their actions were carried out in the good-faith belief that were reasonable under existing circumstances of its lawfulness.[5] J.D. Pflaumer, Inc. v. United States Dept. of Justice (ED Pa) 450 F Supp 1125 (1978). Contrary to that pretense, Coakley, her assistants, and the Commonwealth not only permitted the false charges to go on, but also contributed to them maliciously and willfully, thereby supporting the criminal complaint that was, without question, a vexatious action in bad-faith.

For each of these arguments regarding immunity, the complaint should not be dismissed.

---

[2] One Am Jur 2d section 4 and 5, Abuse of Process; General requisites- improper, willful act
[3] Sixty three Am Jur 2d, Ibid.
[4] Ibid.
[5] Ibid.

**Constitutional Rights**

The Sixth Amendment to the United States Constitution begins, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial..." U.S. Const. Amendment VI. A prosecutors failure to "adhere to speedy trial standards necessitate immediate dismissal of charges against the accused." Commonwealth v. Gove, 366 Mass. 351, 357 (1974) (citing Shrunk v. United States, 412 U.S. 434, 440 (1973)).

The complaint states the case by the Commonwealth and Coakley was maintained falsely and maliciously, for the intent and purpose of hindering, delaying and preventing the free movements of plaintiff, and to accomplish unlawful and ulterior purposes for which the said process was not designed or intended. This went on for nearly a year. And even with the termination of the prosecution and final oral disposition of the Court, neither have yet to issue a formal notation or order to such affect. Some notation was made on the trial Court docket sheet, however it remains unfinished in terms of accurately and fully reflecting the fact that the case was dismissed. The docket still reflects false information regarding plaintiff being on probation. He was never on probation. Where the trial Court did not and has not issued a final order too such effect, it has left the file and docket in such a form where it still conveys false information, and therefore the continuing tort still exists! Despite two separate post-case motions by plaintiff to correct the docket sheet and discovery documents (see attachment), they remain in the file speaking false information and continuing the tort of defamation and False Light. Pursuant to MGL Rules of Criminal Procedure, Rule 32(c), the trial Court was to have made a notation on the docket sheet with regard to the agreement that the case was dismissed. The Rule is clear that the Court need not issue a hard copy of notification or order if the final disposition occurs in open court with the parties present. However, where the docket sheet was never finalized indicating the case was terminated, the trial Court has the responsibility of finalizing this document, and finally, issuing a copy; something plaintiff had requested twice in writing in the Motions to Correct, which were submitted January 22, and 27, 2004.

Where the Commonwealth and Coakley have prolonged the prosecution, they had ample warning that police misconduct was involved, and every opportunity to verify information and conduct further investigation. Despite plaintiff's Motion's for Dismissal and his pleas in the trial court early on, both the municipal Court and Coakley ignored the pleas initially, and then, only gave them a passing and cursory consideration. Six months later, defendants were only beginning to make per functionary inquiries, and even there, they used that opportunity to instill more lies and false information, thereby further and purposefully supporting a conspiracy theory and slandering plaintiff.

**False Light**

By publishing and communicating false information, defendants violated plaintiffs rights of privacy, described in the complaint. Some courts have engaged the common-law right of privacy but have supported their decisions on other grounds and found it unnecessary

to determine the question of the existence of such a right.[6] <u>Themo v. New England Newspaper Pub. Co.</u>, 306 Mass 54, 27 NE2d 753 (1940). The common law right of privacy has usually given rise to a tort action for a violation of that right. However, in the 1950's the United States Supreme Court began developing a language of "constitutional" rights of privacy that protects individuals from improper acts of governmental officers. An individual whose constitutional privacy rights have been invaded by a public entity where state action is involved is entitled to damages in a tort action. (42 USCS § 1983, authorizing civil damage actions against those who under color of state law deprive others of constitutional rights).[7] Some courts have noted that whatever right an individual may have against being placed in a false light before the public, stems from state law, either common or statutory, since no such right is promised in the Constitution of the United States. In Massachusetts the privacy law is MGL c. 214 § 1B, and although it does not mention false light specifically, several local courts have made rulings without the specific statutory guidance. By definition, and as in this case, the element of the tort involved the placement of another in a false light before the public, where it would be considered highly offensive to a reasonable person, and the actor had knowledge of or acted in reckless disregard as to the falsity of the matter.

---

[6] Sixty-two A Am Jur 2d, section 7, Privacy; Common Law Right, Jurisdictions which are undetermined
[7] Ibid. section 8, Privacy, Constitutional right of privacy

## Conclusion

Because there was no reason not to have performed immediate additional investigation upon motion by plaintiff, the fact that additional false information found its way into the case file six months later, and still remains there to this day, without question points to an abuse of process and an abuse by that office which should render any claim of immunity unacceptable.

The damages imparted as a result of the actions of these defendants, and the lingering effects of them, as stated herein and in the primary Memorandum, particularly the resultant defamation that has severely altered plaintiff's reputation, all demand justice be applied to this case. First by correcting the noted errors and omissions, and then by applying those remedies that were demanded in the complaint and which include a request for exemplary damages to reflect the malicious, willful and oppressive nature of the cited grievances.

WHEREFORE, and again, plaintiff has sought this Court's assistance in the way of an impartial judiciary, because of the amount of time and effort expended dealing with these defendants thus far. Where plaintiffs claim was filed seeking judicial review and process, he prays this complaint is not dismissed but rather, receives a fair and equitable examination of each of the allegations.

Respectfully submitted,

December 3, 2004

*[signature]*

CERTIFICATE OF SERVICE

I, George Logue, plaintiff, hereby certify that on the 3rd day of December 2004, I caused a true copy of the documents above to be served on the defendants as listed below, by serving one copy of same via first class mail postage paid.

Respectfully submitted,

*[signature]*

Randall E. Ravitz
Assistant Attorney General
One Ashburton Place
Boston, Ma 02108

# ATTACHMENTS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| George Logue | ] | CIVIL ACTION |
| Plaintiff | ] | CASE NO. 04 – 10822 - DPW |
| | ] | **AFFIDAVIT** |
| v. | ] | |
| Martha Coakley | ] | |
| Assistant District Attorney | ] | |
| Commonwealth of Massachussets | ] | |
| Defendants | ] | |

1. I am currently a resident of the state of Massachusetts, Middlesex County. I have personal knowledge of the matters set forth in this declaration, and if called to testify with respect thereto, could and would do so competently under oath.

2. On December 14, 2002, a criminal complaint was filed against myself by the MIT police department for offenses I was not guilty. At approximately this time the District Attorney of Middlesex, in the Commonwealth of Massachusetts, Martha Coakley and her agents, named as the defendants, began prosecuting this complaint.

3. On May 7, 21, and June 2, 2003, the defendants conducted a series of inquiries for the purpose of discovery. In these documents, including item seven of the discovery response of May 7, 2003, are false statements, as described in the complaint, and pertaining to plaintiffs background.

4. On November 18, 2003, after more than 12 pretrial conferences, the charges were dismissed and the case was therefore determined finally in plaintiff's favor. However, this was never recorded on the trial Courts docket sheet. Only the words, "all conditions satisfied," were added. A copy is attached herein. Further, on January 22 and again on January 27, 2004, plaintiff submitted motions to the trial Court requesting that the file of the trial Court be corrected, including the paragraph 3 items herein. And finally, those motions asked the trial Court if it could clarify and follow through with its dismissal of the case. Where the case docket was left simply with a final hand-written entry plaintiff requested and informed the Court that he awaited a final notice or order. Those motions are attached herein as attachments. Despite follow-up requests through the first half of 2004, action was not, and has yet to be advanced by the trial Court where a final notice or order was issued.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

December 3, 2004                                              *George Logue* (signature)

| | |
|---|---|
| LOGUE, WILLIAM G JR<br>2 JEM AVE<br>BRIGHTON, MA 02135 | Sragow J<br>☐ Waiver of counsel found after colloquy<br>☒ PR ☐ Bail: 12/14/02<br>☐ Held (276 §58A)<br>☐ See back for special conditions |
| | 1-31-03<br>Sragow J |
| DEFT. DOB AND SEX<br>01/28/1959   M | Arraigned and advised:<br>☒ Potential of bail revocation (276 §58)<br>☐ Right to bail review (276 §58)<br>☐ Right to drug exam (111E §10) |
| DATE OF OFFENSE(S): 12/13/2002<br>PLACE OF OFFENSE(S): CAMBRIDGE | Advised of right to jury trial:<br>☐ Does not waive<br>☐ Waiver of jury trial found after colloquy |
| COMPLAINANT: SACCO, DAVID<br>POLICE DEPARTMENT: M.I.T. POLICE | |
| DATE OF COMPLAINT: 12/16/2002<br>RETURN DATE AND TIME: **ARREST** | Advised of trial rights as pro se (Supp. R. 4)<br>Advised of right of appeal to Appeals Ct (R. 28) |

**COUNT/OFFENSE**
1. 266/120 TRESPASS c266 §120

FINE | SURFINE | COSTS $100. | RESTITUTION COMM. Serv | V/W ASSESSMENT Completed

**DISPOSITION DATE and JUDGE:** 11-18-03 Sprague J

**DISPOSITION METHOD:**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING:**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**SENTENCE OR OTHER DISPOSITION:**
☐ Sufficient facts found but continued without guilty finding until: ss 3/1/04
☐ Probation   ☐ Pretrial Probation (276 §87) - until:
☒ To be dismissed upon payment of court costs/restitution — LCF + DEF REM. FEE
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
☐ Request of Deft  ☐ Failure to prosecute  ☐ Other: (COMMONWEALTH OBJECTING)
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

**FINAL DISPOSITION:** All conditions satisfied
☒ Dismissed on recommendation of Probation Dept. with comm. service too
☐ Probation terminated: defendant discharged
**JUDGE:** Sragow J  **DATE:** 12/5/03

(60 mo. total)

**COURT ADDRESS:**
Cambridge District Court
40 Thorndike Street
Middlesex County Courthouse East Cambridge

A TRUE COPY ATTEST: X   CLERK-MAGISTRATE/ASST. CLERK   ON (DATE)

☐ ADDITIONAL COUNTS ATTACHED

# IN THE DISTRICT COURT OF MASSACHUSETTS
# IN THE COUNTY OF MIDDLESEX
# BOSTON, MASSACHUSETTS

___MIT___,                                                        Docket No. 0252CR004043

       Plaintiff

Vs.                                                                               **MOTION TO CORRECT RECORD**

___George Logue___,

       Defendant

Comes now the ~~plaintiff~~ *defendant*, with this Motion pertaining to the aforementioned docket.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendant submits this Motion to correct the court file and record, pursuant to Procedures and Rules of the Court. In submitting this Motion, defendant requests that;

1. The docket sheet be amended to reflect what took place. In the final hearing, all parties agreed the charges were to be dismissed upon payment of certain fees. Defendant fulfilled his obligations, several times over, by performing community service to pay the court fees and also for the assistance of the appointed attorney. At no time was the defendant on probation. *Further, defendant has never had an offense for intoxication by liquor (discovery).*

2. An order be issued by the judge, if this has not already been done, to reflect his decision that the case was 'ordered to be dismissed.' Further, that the docket sheet is stamped as such, and that a copy be made available to defendant.

This Motion is respectfully submitted; signed in Cambridge, Massachusetts this 22nd day of January, 2004.

RECEIVED
CRIMINAL DEPARTMENT

JAN 2 2 2004

Cambridge Division of the
District Court Dept.

RECEIVED
CRIMINAL DEPARTMENT
FEB 0 5 2004
Cambridge Division of the
District Court Dept.

THE DISTRICT COURT OF MASSACHUSETTS
IN THE COUNTY OF MIDDLESEX
BOSTON, MASSACHUSETTS

| | |
|---|---|
| _____MIT_____, | Docket No. 0252CR004043 |
| Plaintiff | |
| Vs. | *Corrected* MOTION TO CORRECT RECORD |
| _____George Logue,_____ | |
| Defendant | |

Comes now the defendant with this Motion pertaining to the aforementioned docket.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendant submits this Motion to correct the court file and record, pursuant to Procedures and Rules of the Court. In submitting this Motion, defendant requests that;

1. The docket sheet be amended to reflect what transpired regarding community service. Defendant had proposed the idea of volunteering to distribute food to the homeless shelters, early on, in lieu of attorneys and court fees. In the final hearing, all parties agreed the charges were to be dismissed upon payment of fees. Where defendant fulfilled his obligations, several times over, by performing community service to pay the court fees, and for the assistance of the appointed attorney, he had met the courts demands regarding fees. At no time was the defendant on probation.

2. An order be issued by the judge, if this has not already been done, to reflect his decision that the case was 'ordered to be dismissed.' Further, that the docket sheet is stamped as such, and that a copy be made available to defendant.

3. The discovery forms and answers prepared by the Commonwealth be clean of all false information. For instance, in item number seven, the defendant has never had a prior offense regarding drinking and driving.

This Motion is respectfully submitted; signed in Cambridge, Massachusetts this 22nd day of January, 2004.

*George Logue*